Good morning Ms. Abraham. You have requested three minutes for rebuttal. So that gives you seven minutes to begin. So we've got 12 minutes total, nine to start, three rebuttal, and six per side on the other, if necessary, because we may have some questions about that. All right. You may proceed, Ms. Abraham. Good morning, and may it please the Court. My name is Sharon Abraham with Borelli & Associates, PLLC, and I represent the appellant, Jameel Barrett, who is a pro se plaintiff in the district court. This case stems from Mr. Barrett's employment with United Parcel Service, or UPS. Mr. Barrett was working for UPS as a part-time preloader in 2010 when he was injured on the job and was then fired by UPS while he was on workers' compensation. Everything that has happened since then has been a result of that, of Mr. Barrett trying to assert his claims against UPS for his wrongful termination of employment. First, Mr. Barrett brought his claims for UPS wrongfully terminating him, and then after a settlement agreement was reached and UPS did not uphold its side of the settlement, Mr. Barrett has brought his claims for UPS's breach of that settlement agreement. Can I just first begin with the union? Because it seems that you're not really, at least your brief didn't articulate arguments with respect to the union. So are you pursuing an appeal with respect to them? We are not. You're not? Okay. And then so with respect to UPS, it seems your principal argument is that the district court should have construed the pro se complaint to bring a breach of contract claim under state law against UPS, right? Yes. And then you also say that the district court, at the very least, should have allowed an opportunity to amend. Yes. But there have been several amendments already, right? There were two amendments. The first amendment happened before the complaint was served on defendants, and the second amendment was done on consent before any motions were filed. And there was no request for an amendment after that, right? Did Mr. Barrett, after dismissal or as part of the briefing on the motion, say, I'd like to amend? He did not. He was a pro se plaintiff. He didn't know he was supposed to. Okay. I'm trying to find the settlement agreement. Is there a document that lays out the settlement agreement, or is it just there's this decision, case is settled, withdrawn? Oh, sorry. Go ahead. Apologies for interrupting. No, no, no. It was a verbal settlement. A verbal settlement. And what sets out the terms of the verbal settlement? Mr. Barrett was to withdraw his grievance, and UPS would permit him to return to work as a full-time driver. Those are the terms, but are they memorialized anywhere? I mean, I guess I do see something in the complaint, but is there anything that lays out, memorializes the terms of this oral settlement? Not at the time that the settlement agreement was reached. However, there was a case prior to this case in which, in their, between Mr. Barrett and the same defendants, and that case reached summary judgment and their statement of facts, all of the parties wrote their understanding of the terms of the settlement agreement. So it's not, it's not in dispute that there was the settlement agreement. And who was, who was the settlement agreement between? The settlement agreement was between UPS and Mr. Barrett. It was negotiated for Mr. Barrett by the union. So that, that confuses me a little bit because part of the, part of what happened, in fact, Mr. Barrett didn't even know about the agreement for a couple years afterwards. Correct. And the claim that was resolved was a claim that was related to his termination, but it was a claim that was filed by the union. Is that, is that right? The grievance was filed by the union on his death, yes. Why, why would we understand that agreement to be between UPS and Mr. Barrett, who didn't even know about it, rather than between UPS and the union, who was the one who filed the grievance and then withdrew the agreement? Well, I think that is because, first off, even if Mr. Barrett wasn't actively negotiating the settlement on his own, it was clearly done on his behalf by the union. Sure. But do you mean that the union was acting as an agent in that sense? Yes. To enter into this contract? Yes. And furthermore, the actual agreement that was come to, the settlement agreement that the parties came to, does not require any interpretation of the collective bargaining agreement to enforce. But I think, am I wrong, that the question isn't necessarily just whether it requires us to interpret the collective bargaining agreement. It's whether the agreement was a contract between the employer and the labor organization, which I think is why you're wanting to hold firm to the notion that this is a contract between UPS and Mr. Barrett. All right? And that's what I'm poking at a little bit. Was his consent required for the union to withdraw the grievance? His consent was not required for the union to withdraw the grievance. So the union really owned the performance. I mean, it wasn't his grievance to refuse to withdraw or not. It was a grievance that the union was responsible for administering. The union, yes, the union administers the grievance. Having said that, the grievance is obviously on, you know, for Mr. Barrett, is for his claims, claims that he could have brought in court for the wrongful termination. So even the underlying claims that were withdrawn were not necessarily subject to the collective bargaining agreement. Could he have gone to court for the termination consistent with the sort of dispute resolution procedures in the collective bargaining agreement? For disability discrimination or for workers' compensation retaliation, yes. Okay. I see. Furthermore, as UPS addressed in their brief, anything that is not challenged from the decision stands. And the decision of the lower court did mention that the settlement agreement was negotiated by the union on Mr. Barrett's behalf. So it seems that so that is no longer challengeable. Is there a case like this where a union negotiates a settlement on behalf of an employee in the context of preemption? I do not believe that I found a comparable case. Well, what do you do? Either way, either way, right? Right, neither. Okay. Does the retail clerk's case help me then understand how that fits in? As I understood it in that case, the labor organization essentially resolved the grievance on behalf of the representative employees, and it was an effort to enforce that. And that was viewed to be an action that wasn't a preemption case. It was a question about whether Section 301 applied. And I thought the court said it did. And so maybe I'm misunderstanding the significance of that case. I'm sorry. I didn't hear which case. The retail clerk, International Association of Local Unions v. Y and Dry Goods. That's the Supreme Court case from 62. The so I will mention that since sorry, I'm just not recalling that. I have to just check.  No worries. But I will say as well that the law in terms of what is or is not subject to preemption by Section 301, that law has evolved since 1962. But I can't remember. We had a case in 2015, which is a little more recent, though it's a summary order. But still, it's nonetheless a case in which we held that a settlement agreement between a union and an employer is in fact covered by 301. And so isn't that the same as what's going on here? No. I don't think it is. Okay. So why? Here this was a straightforward settlement between the union or excuse me, between UPS negotiated by the union on Mr. Barrett's behalf. It was for Mr. Barrett's claims that were already not subject to the collective bargaining agreement. And they made a settlement that does not rely on the collective bargaining agreement. It is not something that is in danger of different interpretations and then enforcing the collective bargaining agreement differently in different forums. It just doesn't meet the standards of something that would be preemptive. In your view, does 301 apply only to collective bargaining agreements and agreements that interpret collective bargaining agreements or apply them? Or does it apply to any contract between an employer and labor organization representing employers, employees? I think the answer to that is something in the middle of those two options. Okay. I don't think part of the test for determining if Section 301 applies or Section 301 preemption applies does consider whether or not interpretation of the collective bargaining agreement will be necessary to resolve the claims. Having said that, it's not, you know, it's clearly not exclusive to just negotiating the collective bargaining agreement. I'm sorry. I think I'm over my time. All right. Well, you've reserved three minutes for rebuttal, so now we will hear from UPS. That's Mr. Cronin or Mr. Weiss. Well, it sounds like from what Ms. Abraham just said that you have very little to say. You can have candy now. Thank you so much. All right. Thank you. I don't want to shut you down, but, I mean, I think that given what Ms. Abraham said there's no point really in having you elaborate. All right. So, Mr. Weiss. Yes. So, you may proceed. One of Your Honors, and may it please the Court, as I think Your Honor's questions indicated, the issue in this case is whether the settlement agreement that Mr. Barrett seeks to assert a new breach of contract claim under is covered by the LMRA, is preempted by the LMRA, and if it is, whether there's any point in remanding because the district court already addressed an LMRA claim covering the exact same issues. Does the breach of contract claim, assuming there is one, does it implicate the collective bargaining agreement in any way? No, but I don't think it has to. I think under the precedent, the statute is clear that it's any contract, and I think that's laid out pretty clearly by both the Supreme Court and the circuit, that the contract can be any contract between a union and an employer. The cases that talk about it requiring interpretation of the CBA, I believe are talking about a CBA because that's the contract at issue. I think that's the contract at issue in most LMRA cases. It is the collective bargaining agreement. But the critical issue is whether it requires interpretation of the contract that is covered by the LMRA, not necessarily whether that contract is a collective bargaining agreement. So, while I don't think as stated on appeal, and again, we haven't seen, it's a new claim that's seeking to be asserted. Your UPS's position is that any contract between a union and an employer relating to a CBA, even assuming it doesn't require interpretation of the CBA, is preempted? Yes, as long as it requires, I believe it would require interpretation of the contract at issue, which here would be the settlement agreement. Okay. Yes, so that is UPS's position, that it doesn't necessarily require interpretation of a CBA above and beyond interpretation of the contract at issue that is the subject of the LMRA preemption. There do seem to be a fair number of cases that say there can be contracts that are not preempted between an employer and an employee. Yes. All those are between employer and employee, and I can walk through some of those from the cases cited. What about, even as the district court recognized, this settlement agreement was entered into by the union on behalf of the employee. Does that make a difference? I don't think so. I think, I mean, one, fundamentally, virtually everything a union does is on behalf of its member employees. So reading it that broadly, I think, would undermine the purpose of the LMRA. I also think in Mr. Barrett's complaint, he on several occasions mentions this and describes this as an agreement between the union and between UPS, most particularly in Paragraph 61, which is on Appendix 94. He says this grievance was allegedly settled in October 2014 after UPS made a settlement agreement with Local 804 to reinstate plaintiff. Is there any dispute, by the way, there was a settlement, the settlement is a contract? No, Your Honor, I don't think so. There's a dispute about what the agreement required, but I don't think there's a dispute that they had settled this grievance. Yeah, so I think one of the main issues is about whether it's a contract. I think that covers it, unless Your Honor has any other questions on that. Also, one of the other issues I wanted to address from the reply brief is whether interpretation of the CBA is required, and I think we covered that as well. As long as the interpretation of the contract that is subject to the LMRA has to be interpreted, that the LMRA preemption would apply. In reply, Mr. Barrett also made an argument that the case is going to involve interpretation of a contract, and that theory, all contracts would be, you know, in this area would be preempted. Where it's a breach of contract that is alleged. A lot of the other cases that talk about other agreements, the claims that issue are not breaches of contract, they're tort claims. Or they are contracts that are directly between the employer and the employee. A couple of those that were cited dealt with a case in which the employer requested that the employee withdraw from the union, so it was necessarily not a contract. What's the purpose of preemption in this context? The purpose of the preemption. And does that, whatever that purpose is, does it apply to this situation? Yes, I think it does. So I think the purpose here is to preserve the bargaining position between union and employer, that the interpretation of agreements that are reached between them is governed in accordance with labor law, and not under a state law breach of contract claim. And the grievance settlement here was a grievance that was settled pursuant to the collective bargaining agreement. And so while it doesn't reach into the collective bargaining agreement insofar as that it requires any interpretation, the resolution of a grievance pursuant to the arbitration procedure is within the scope of what the purpose of the LMRA is here. And there's no suggestion that the union was acting without authority under the collective bargaining agreement to represent Barrett, right? That's correct. There's no suggestion that they weren't doing that. There was the argument that the union didn't follow through the way that they should, which is what makes it a LMRA hybrid claim, as would be, as was analyzed by the district court below, and as would be analyzed by the district court again if this were remanded for a new breach of contract claim. Some of the cases that we've read in preparation for today involve the scope of Section 301 in terms of jurisdiction, jurisdiction, and some involve preemption. In your view, is the scope of LMRA preemption coextensive with the scope of Section 301 jurisdiction? In other words, if it's a — if it's a — if it's within the scope of 301 for purposes of Federal jurisdiction, does that mean it necessarily is preemptive as to a State law contract claim based on the same agreement? I believe so, Your Honor. At the very least, it certainly is coextensive enough to cover this case, but I believe it would be fully coextensive. I see I'm almost out of time. Sorry. Did the district court analyze this issue of whether the claim is preemptive? I don't think the district court analyzed whether — directly whether this breach of contract claim, because the breach of contract claim was not before it. But that is a purely legal conclusion that I don't believe would have to be remanded. Should the district court have considered the breach of contract claim? I mean, if you liberally construed a complaint, is there not a breach of contract claim lurking there? I don't think so, Your Honor, because of the issues discussed, that it would be completely preempted by the LMRA. And even if the district court should have discussed or analyzed whether a breach of contract claim would be preempted, it's a purely legal question, and that's the basis of the futility argument that we make on appeal, is that sending it back to the district court would be futile because the legal conclusion is one that this court can reach in the first instance, which is that even if he tried to assert a breach of contract claim, it wouldn't necessarily be preempted and analyzed the exact same way as the LMRA claim was in the first instance. Thank you. Thank you very much. Mr. Weiss will now hear from Ms. Abraham for three minutes of rebuttal. Thank you, Your Honors. I would, just as an initial matter, like to note that I believe that Your Honor had asked if the complaint did make out a breach of contract claim, and other than UPS's argument that it would be preempted, UPS has not denied, did not deny in their brief at no point, has denied that there is a breach of contract claim asserted in the complaint. Their only argument is that it would be preempted. In terms of UPS's argument that any contract would be preempted, this is an argument they've made before other courts that that has been rejected by other courts. And as the Supreme Court ruled in Caterpillar v. Williams, that it's a failure to recognize that a plaintiff covered by a collective bargaining agreement is not asserted, excuse me, it's a failure not to recognize that a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights independent of that agreement, including state law contract rights. So it has been recognized that contracts are not all preempted by Section 301, despite UPS's insistence on it. But in this case, the union represented your client in this dispute, in this grievance, right? Yes. It wasn't done without his permission or without his knowledge. No, it was not without his permission. It wasn't outside of the scope of the collective bargaining agreement, right? The grievance itself. I mean, I can imagine a scenario where there's a union worker who also happens to be a college athlete, and if the union decided they're going to negotiate his name, image, and likeness rights, I don't think they'd be able to do that, and that would be a problem, and I can't believe that that contract would fall under Section 301. But this is not that case. This is a situation where this is right down the middle of the fairway of what the collective bargaining agreement is supposed to be covering, right? No, not the settlement. The actual settlement does not rely on the collective bargaining agreement. The underlying claims that Mr. Barrett had initially did not rely on the collective bargaining agreement. The grievance itself, the union represented him pursuant to a collective bargaining agreement. Right. The grievance is covered by this collective bargaining agreement, right? Yes. And so it's the resolution of that grievance claim that generates this contract, this settlement, and that's the question, whether that is covered by Section 301, right? That's the question. The answer, I believe, is that it's not. So why wouldn't it be? Why would we not want that? Because the actual agreement does not rely on the collective bargaining agreement. The actual agreement is just that Mr. Barrett will withdraw the grievance, and UPS will return Mr. Barrett to work or permit him to return to work.  And UPS would not uphold its side of the agreement. But there's no, you know, based on those facts, there's no requirement to interpret the collective bargaining agreement to determine whether or not that agreement was held, whether or not UPS breached that agreement. But, I mean, he can bring a new grievance. There are other, again, there are other remedies under the collective bargaining agreement for that scenario, aren't there? Under the collective bargaining agreement, there would be other remedies. Mr. Barrett is choosing to, is choosing this remedy. That there are remedies under the collective bargaining agreement does not first stop at all Mr. Barrett from taking this remedy. And, in fact, courts have ruled that if a party can bring a Section 301 claim, it doesn't mean they can't also bring a state law claim or choose to bring the state law claim instead. You're describing the agreement as agreement that Mr. Barrett would withdraw his grievance. Isn't it more precise to describe it as an agreement that the union would withdraw the grievance and he would be permitted to return to work? The union did withdraw the grievance on his behalf, yes. Okay. But, and I understand the on his behalf not to mean that they were acting pursuant to his instructions, but they were acting within the scope of their authority as his representative. And they were really the ones who necessarily had to be the parties to that agreement because it was an agreement to withdraw a grievance that they were the ones who had the authority to withdraw. Could he have unilaterally withdrawn the grievance if the union had objected? Yes. Yes, I see no reason why he wouldn't have been able to withdraw his grievance. Okay. And just one thing, I see I'm out of time. If I could just note one thing, that Mr. Weiss did mention that Mr. Barrett in his papers had referred to the agreement with the union. And I just note that that is one of the reasons why there is that liberal construction for pro se plaintiffs. As this Court ruled in Treason versus Federal Bureau of Prisons, that implicit within the understanding that pro se, that a party can represent himself pro se, is that the right of self-representation also is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. And I think that that's what the situation here is. Mr. Barrett does not have legal training. His legal conclusions are not based on or he is a pro se litigant and that should be recognized in his legal conclusions. All right. Thank you.  We will reserve decision.